**GREAT PLAINS FEDERAL SAVINGS AND LOAN ASSOCIATION,**
Appellant,

v.

**B. Wayne DABNEY, an individual and Van Dyck, Hays, Dabney, Pullins, Rivas & Kingsolver, P.C., a Professional Corporation, Appellees.**

No. 69930.

Supreme Court of Oklahoma.

Jan. 26, 1993.

A. Daniel Woska, Kendall W. Tresler, Jeffrey A. Glendening, Janet G. Chesley,

Naifeh & Woska, Oklahoma City, for appellant.

Charles F. Alden, III, Julie Trout Lombardi, Holloway, Dobson, Hudson & Bachman, Oklahoma City, for appellees.

LAVENDER, Vice Chief Justice.

■ On August 13, 1987 appellant, Great Plains Federal Savings and Loan Association (appellant), sued appellees, an attorney and a law firm (appellees), in tort for legal malpractice and for breach of an oral contract between the parties or, alternatively, a contract between appellees and another whereby appellant claimed third-party beneficiary status. Certain documents were attached to the petition, including a written title opinion from appellees to appellant dated August 14, 1984, a follow-up opinion dated September 24, 1984 and a letter from appellees to appellant dated July 24, 1986 *indicating a mortgage of record when the earlier title opinions were rendered was only recently discovered by appellees.* Appellees moved to dismiss pursuant to 12 O.S.Supp.1984, § 2012(B)(6). They argued the petition failed to state a claim upon which relief could be granted because it showed on its face the action was barred by the two year limitation period found at 12 O.S.1981, § 95 (Third).[1] Appellant responded arguing the action was controlled by the three year limitation period found at 12 O.S.1981, § 95 (Second) for suits for breach of oral contracts. Appellant *expressly* waived any theory of liability based in tort and elected to proceed in contract. It stated in the response, "[t]hus, Plaintiff is electing to waive its cause of action in tort and to proceed upon a breach of contract." The trial court, obviously convinced the matter could only proceed in tort for legal malpractice, granted the motion to dismiss. Appellant appealed and the Court of Appeals affirmed.[2] We previously granted certiorari.

---

1. Section 95 was recently amended by the Forty–Third Legislature in a manner not pertinent here. The amendment concerns time limits for certain types of sexual abuse cases and may be found at 1992 Okla.Sess.Law Serv., Ch. 344, § 1.

2. Much briefing of the parties on appeal and the decision of the Court of Appeals concerns the limitation period for torts found at § 95 (Third) and applicability of the discovery rule to legal malpractice cases. No such argument was made by appellant in its two response briefs to the motion to dismiss filed in the trial court.

As pertinent for our decision the petition and the documents attached to it allege the following:[3] An individual, John Hudson sought a $375,000.00 loan from appellant. Hudson furnished financial statements to appellant which listed a 344.2 acre farm having a value of $757,240.00 as an asset. The statements indicated a loan against the farm with another financial institution having a balance of $120,000,00. In order to determine the advisability of the loan appellant either entered into a contract with appellees to examine the abstract of title to the property and certain documents in the Grady County Clerk's Office or, alternatively, appellant was specifically intended to be a third-party beneficiary of a contract between Hudson and appellees to do so.

On August 14, 1984 appellees, by B. Wayne Dabney, sent a title opinion/letter to Bill Davis of appellant, which said it was being sent at Davis' request, an abstract of title certified to October 1, 1975 had been examined, as well as certain instruments recorded in the Grady County Clerk's Office. The letter also detailed the debt to the other financial institution. The last sentence of the letter provides in pertinent part, "[t]his opinion is ... for loan purposes only and is written for the use and benefit of the bank only." On August 16, 1984 appellant, in reliance upon the letter, loaned Hudson $375,000.00 secured by a real estate mortgage. On September 24, 1984 Dabney sent a follow-up title opinion/letter to Davis opining the mortgage to appellant "appears to be a valid and existing *second mortgage lien* upon the ... property." (emphasis in original) Appellant's loan to Hudson was due and payable, along with certain interest, on February 14,

---

Although at oral argument in the trial court appellant's attorney mentioned the potential for a fraudulent concealment tolling of the two year statute for torts, neither such an issue nor the discovery issue was contained in either of its response briefs in the trial court. As noted in the text, in its initial response brief appellant *expressly* waived any theory of liability based in tort and elected to proceed only in contract. Accordingly, it was improper for the Court of Appeals to consider the applicability in this case of any discovery rule issue on appeal. This is so because generally, parties on appeal are limited to the issues presented to the trial court. *Jones v. Alpine Investments, Inc.*, 764 P.2d 513, 515 (Okla.1987). For this reason we do not consider any issue in this case concerned with the applicability of the discovery rule as it might apply to cases sounding in tort for legal malpractice. This issue was not before the trial court and it cannot be raised for the first time on appeal. For the same reason we do not consider any potential fraudulent concealment issue. We also note in its certiorari petition appellant, as to the contract issue, only questions the Court of Appeals' ruling as to its status, or lack thereof, as a third-party beneficiary and we will, thus, decide that issue.

3. In ruling on a motion to dismiss allegations in the petition must be construed in connection with exhibits attached to the pleading. *See Eckel v. Adair*, 698 P.2d 921, 923 (Okla.1984). In other words, it is proper to consider exhibits attached to a petition when ruling on a motion to dismiss for failure to state a claim upon which relief can be granted made pursuant to 12 O.S.1991, § 2012(B)(6). In fact, 12 O.S.1991, § 2010(C) specifically provides, "[a]ny written instrument which is an exhibit to a pleading is a part thereof for all purposes." Furthermore, in ruling on a motion to dismiss an appellate court must take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them. *Eckel, supra* at 923. Although *Eckel* was litigated in the trial court prior to the effectiveness of the Oklahoma Pleading Code, 12 O.S.Supp.1984, § 2001 et seq., as amended, and it dealt with review of a judgment which sustained a general demurrer, the comments to § 2012(B)(6) make it clear a motion to dismiss for failure to state a claim upon which relief can be granted under the Oklahoma Pleading Code was intended to take the place of a general demurrer. In pertinent part the Committee Comment to Section 2012 provides:

A motion to dismiss for failure to state a claim upon which relief can be granted under paragraph 6 of subsection B of Section 2012 replaces the code versions of the general demurrer to the pleadings. But a petition should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. (citations omitted)

OKLA.STAT.ANN. tit. 12, § 2012, Committee Comment to Section 2012 (West). Both § 2012 and § 2010 have remained unchanged since the adoption of the Oklahoma Pleading Code in 1984. Finally, where a petition pleads facts sufficient upon their face to show an action is not barred and has been brought in the time allowed by statute, it is error to sustain a demurrer thereto. *First National Bank of Harrah v. Wright*, 192 Okla. 182, 135 P.2d 344, Third Syllabus (1943).

1985. Hudson defaulted. On July 24, 1986 Dabney sent a further letter to Davis in care of an attorney advising an existing mortgage to a third financial institution was discovered *which had been filed and recorded in the records of the County Clerk of Grady County on March 10, 1982* and telling Davis, "[i]t appears that this mortgage is prior to your mortgage on the property." Appellant sued for the principal loan amount, interest, costs and attorney fees.

 As we view the allegations and the reasonable inferences to be drawn from them, appellant alleged not only that appellees were engaged to perform a title opinion relying on an abstract of title certified by an independent abstracting company, but they were engaged either by appellant itself or, alternatively, by Hudson, with appellant being a specifically intended third-party beneficiary, *to search the records of the County Clerk from the period of the abstract of title noted in the August 14th title opinion/letter (i.e. October 1, 1975) to the date of the August 14th letter in 1984.* In essence, part of appellees' responsibilities under the purported oral contract *was to act like an abstractor to search the records.* Although not expressly alleged in the petition or documents attached thereto we believe the reasonable inference flowing from the petition and documents is appellees were alleged to have agreed to furnish a correct statement of those documents affecting the title for loan purposes from October 1, 1975 (the certification date of the abstract reviewed) to the date of the title opinion in August 1984.[4]

 We have held when an abstracting company breaches an oral agreement to diligently search real estate records, provide an abstract of title and a certificate thereof, the cause of action is one founded on the breach of an oral contract and is governed by the three year limitation period. *Close v. Coates,* 187 Okla. 315, 102 P.2d 613 (1940); *Freeman v. Wilson,* 105 Okla. 87, 231 P. 869 (1924); *Garland v. Zebold,* 98 Okla. 6, 223 P. 682 (1924). The cause of action accrues on the delivery date of the certificate of title. *Close v. Coates, supra.* We can hold no differently merely because a lawyer or law firm are alleged to have entered into a similar type of oral contract. Accordingly, the earliest point the three year limitation period would begin to run would be August 14, 1984, the date of the initial title opinion.[5]

Appellees argue the instant case should be controlled by *Funnell v. Jones,* 737 P.2d 105 (Okla.1985), *cert. denied,* 484 U.S. 853, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987), a case where we applied the two year tort limitation period to a legal malpractice case. Appellees' reliance on *Funnell* is misplaced. The opinion in *Funnell* gives no indication a separate contract theory was alleged there or that the plaintiffs there attempted to rely on the three year limitation period for oral contracts. Thus, our statement in *Funnell* to the effect an action for malpractice, whether legal or medical, though based on a contract of employment, is an action in tort, must be taken in the context it was made, to wit: determining whether the two year limitation for torts was tolled based on allegations of fraudulent concealment on the part of defendant attorneys and that no acts alleged against defendants occurred within the two years immediately

---

4. Of course, we cannot speak to whether or not appellees *actually* agreed to correctly search and report all such documents. Here we are merely at the pleading stage and we must take as true all well-plead allegations in the petition and documents attached thereto and the reasonable inferences to be drawn therefrom. *Eckel v. Adair,* note 3, *supra.*

5. We wish to point out we do not intimate the alleged contract is exactly like one that an abstractor covered by the Oklahoma Abstractors Law, 74 O.S.1991, § 227.10 et seq. might enter into or that appellees were engaged in conduct

subject to that Law. We simply hold on the facts alleged in the petition, with attached documents, and the reasonable inferences to be drawn therefrom, the allegations are sufficiently like the abstractor situation under the cases cited in the text to call for use of the three year limitation period for oral contracts. We also note § 227.29 of the Oklahoma Abstractors Law provides a five year statute of limitation from the date the abstract certificate is issued. Appellant does not argue said limitation period or the Abstractors Law in general is applicable here.

preceding filing of the lawsuit. *Id.* at 107–108. We did not decide in *Funnell* a proceeding against a lawyer or law firm is limited *only* to a proceeding based in tort no matter what the allegations of a petition brought against the lawyer or law firm. We have never so held and, in fact, to so rule would be tantamount to treating lawyers differently than we have treated other professions, something we refuse to do.

We have held a party may bring a claim based in both tort and contract against a professional and that such action may arise from the same set of facts. *Flint Ridge Development Company, Inc. v. Benham–Blair and Affiliates, Inc.,* 775 P.2d 797, 799–801 (Okla.1989) (architectural, engineering and construction supervision services). In essence, the holding of *Flint Ridge* is, *if* the alleged contract of employment merely incorporates by reference or by implication a general standard of skill or care which a defendant would be bound independent of the contract a tort case is presented governed by the tort limitation period. *Id.* at 799–801. However, where the parties have spelled out the performance promised by defendant and defendant commits to the performance without reference to and irrespective of any general standard, a contract theory would be viable, regardless of any negligence on the part of a professional defendant. *Id.* As pertinent here, the specific promise alleged

or reasonably inferred from the petition and documents attached thereto was to search the records of the County Clerk for an approximate nine (9) year period and report those records on file affecting the title for loan purposes. Simply, *if* this was the promised obligation a contractual theory of liability is appropriate which is governed by the three year limitation period applicable to oral contracts.

Consistent with this view is a case relied on by both parties to support their respective positions, *Seanor v. Browne,* 154 Okla. 222, 7 P.2d 627 (1932). *Seanor* holds although the gravamen of an action against a physician is in tort, where a special oral contract is also alleged whereby defendant agreed to cure the injury of plaintiff the action also sounds in contract and use of the three year limitation period is appropriate to the contract portion. *Id.,* 7 P.2d at 627–628, Second Syllabus.[6] Here, although the gravamen of the petition is in tort we are of the opinion the petition, with attached documents, and the reasonable inferences to be drawn therefrom, are sufficient to plead a special oral contract to diligently and correctly search and report as to the records in the Grady County Clerk's Office from October 1, 1975 to the date of the first title opinion/letter of August 14, 1984.[7]

6. We note *Funnell* cited to *Seanor v. Browne* when it stated an action for malpractice, whether legal or medical, though based on a contract of employment, is an action in tort governed by the two year limitation period. *Funnell,* 737 P.2d at 107. Obviously, in that *Seanor itself* also recognized the potentiality for a contract theory governed by the three year limitation period, *Funnell* could *not* have been holding all actions against attorneys for legal or legally related work must be grounded in tort no matter what the lawyer agreed to do or accomplish.

7. We note that although appellant does allege in the petition appellees were negligent in performing under the alleged contract (apparently because appellant mistakenly thought negligence *had to* be proved *even if* a specific performance was promised) the petition does not unequivocally indicate the agreement bound appellees *only* by a requirement of ordinary care in searching for and reporting relevant documents. Accordingly, under our liberal pleading rules

and the standard for determining when a motion to dismiss for failure to state a claim upon which relief can be granted should be sustained it was improper to sustain the motion to dismiss. Whether appellees did, *in fact,* bind themselves to a specific performance without reference to and irrespective of any negligence on their part so as to support a contract action beyond the pleading stage will, of course, have to await further developments in the trial court. At this stage of the proceeding, however, we can express no view as to what the true facts were. This determination can be made only upon further proof. Our decision therefore should not be read to foreclose appellees from pursuing their statute of limitation defense via a motion for summary judgment under the applicable rules set out herein for when an action against a professional may appropriately proceed in contract or, alternatively, would *only* support an action sounding in tort which would be subject to the shorter two year limitation period of 12 O.S.1981, § 95 (Third).

 Appellees also assert the action should not be allowed to go forward on a contract claim on the basis of appellant's claimed third-party beneficiary status. Appellant has sufficiently alleged such status. The primary issue in a case where the suing plaintiff claims third-party beneficiary status is whether the direct parties to the contract intended the third party to have such status. *Barbero v. Equitable General Insurance Company*, 607 P.2d 670, 673 (Okla.1980). Where a contract is made expressly for the benefit of a third party that party may avail himself of contractual benefits and maintain an action thereon. *Keel v. Titan Construction Corporation*, 639 P.2d 1228, 1231 (Okla.1981). In fact, by statute, "[a] contract, made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." 15 O.S. 1991, § 29.

Appellees argue, however, the *general* rule that attorneys are liable for their misdeeds only to their employers, i.e. their clients and normally some privity of contract is necessary between the suing party and the legal practitioner. We do not question the general rule as stated in cases such as *Savings Bank v. Ward*, 100 U.S. 195, 25 L.Ed. 621 (1879). However, *Ward* is distinguishable from the present case. First and foremost, no contractual third-party beneficiary status was claimed there. Second, the facts involved were wholly different from the facts alleged here. The attorney in *Ward* had no knowledge of the purpose his client was obtaining an examination of title. *Id.* at 197 and 199. The attorney never had any contact with the financial institution. *Id.* Further, the attorney rendered nothing to the financial institution *at its request or on its behalf. Id.* at 200. Finally, no statute was involved

there, like ours found at 15 O.S.1991, § 29, which allows a contract to be enforced which is expressly made for the benefit of a third party.[8]

Given the rather pointed statement of Dabney contained in the last sentence of the August 14th title opinion/letter to Davis that the letter opinion *is written for the use and benefit of appellant only* we would be hard-pressed to say a factual question is not raised at the pleading stage as to appellant's status as a third-party beneficiary. As also noted, Dabney's initial letter stated it was being sent at Davis' request. We also note the August 14th letter contained the following language, "[s]ubject to the following objections, exceptions and requirements, I approve the title for loan purposes[ ]". These allegations at the pleading stage are sufficient to allow the case to go forward and were sufficient to withstand a motion to dismiss for failure to state a claim upon which relief can be granted.[9]

For the above reasons, the decision of the Court of Appeals is VACATED, the judgment of the trial court dismissing the action is REVERSED and the matter is REMANDED to the trial court for further proceedings.

HARGRAVE, OPALA, ALMA WILSON, KAUGER and WATT, JJ., concur.

SUMMERS, J., concurs specially.

HODGES, C.J., dissents.

SIMMS, J., not participating.

OPALA, Justice, with whom KAUGER, Justice, joins, concurring.

The Court of Appeals affirmed the trial court's dismissal (for failure to state a claim) of an action against a lawyer for damages from his failure to discover and

---

**8.** Appellees' reliance on cases such as *Anderson v. Canaday*, 37 Okla. 171, 131 P. 697 (1913) and *Thomas Fruit Co. v. Levergood*, 135 Okla. 105, 274 P. 471 (1929) is also misplaced. Neither of those cases was based on any type of contractual theory. Further, the rule espoused therein to the effect an attorney is not liable to another for the acts of his client based on the attorney's advice in the absence of some type of bad faith on the part of the attorney simply has no application to a situation where, as here, a third-party beneficiary contract is asserted.

**9.** For cases recognizing attorneys may be liable based on a third-party beneficiary analysis see Annot. "Attorney's liability, to one other than immediate client, for negligence in connection with legal duties," 61 A.L.R. 4th 615, 661–673 (1988).

report a recorded mortgage that should have been found in the course of a title search. The court holds today that the plaintiff's [S & L's] petition[1] is sufficient to withstand a § 2012(B)(6)[2] motion to dismiss. Although I concur insofar as the opinion allows the pleader of a claim to invoke all the affordable theories and remedies,[3] I write separately to correct the misguided notion—which has crept into the stream of extant jurisprudence—that when the same facts give rise to a claim for breach of contract as well as to one in tort for professional malpractice, the plaintiff *must proceed ex delicto unless he/she can prove that the defendant breached (in the course of a contract's performance) an express promise to exercise greater than*

---

**1.** This action was filed August 13, 1987. The sufficiency of the petition under review must be measured by the Oklahoma Pleading Code [Pleading Code], 12 O.S.Supp.1984 §§ 2001 *et seq.*, which is patterned after the Federal Rules of Civil Procedure.

The terms of 12 O.S.Supp.1984 § 2008(A)(1) provide:

"A. CLAIMS FOR RELIEF. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain:

1. *A short and plain statement of the claim showing that the pleader is entitled to relief;* * * *.

*Relief in the alternative or of several different types may be demanded.*" [Emphasis mine.] Section 2008 was amended by Laws 1987, c. 78 § 2, eff. Nov. 1, 1987; the amendment has no effect upon this appeal.

The terms of Fed.R.Civ.P. 8(a) provide in pertinent part:

"(a) Claims for relief. A pleading which sets forth a claim for relief ... shall contain: ... (2) *a short and plain statement of the claim showing that the pleader is entitled to relief,* * * *.*" [Emphasis mine.]

Rule 8(a) is intended to ensure that the opposing party receive fair notice of the plaintiff's claim and the grounds upon which it rests. *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, 85 (1957).

**2.** The terms of 12 O.S.1984 Supp. § 2012(B)(6) provide in pertinent part:

"... the following defenses may at the option of the pleader be made by motion:

\* \* \* \* \* \*

6. Failure to state a claim upon which relief can be granted; * * *"

*The § 2012(B)(6) dismissal for failure to state a claim upon which relief may be granted is appropriate only when it is beyond a doubt that no factual situation exists which entitles the claimant to relief. Frazier v. Bryan Memorial Hosp. Authority,* Okl., 775 P.2d 281, 287 (1989). The Committee Comment to § 2012(B)(6) observes that a *§ 2012(B) motion* "... replaces the code [of civil procedure] versions of the general demurrer to the pleadings. But *a petition should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him/her to relief."* [Emphasis mine.]

**3.** *Under the old common-law forms of action regime,* if the plaintiff brought assumpsit, his cause of action was founded on contract; if he brought trespass, case, deceit or trover, the strictures governing tort had to be met. *See* W. Prosser, The Borderline of Tort and Contract, Selected Topics on the Law of Torts, p. 429–430 (1953). The Code of Civil Procedure which governed in Oklahoma before its repeal in 1984 was designed to eliminate some of the extreme technicalities of common-law procedure. An identical code was in effect in many other states. Even after the code's enactment, some states clung to the "theories of the pleadings" mentality; *on the particular facts pleaded or proved, these jurisdictions required that the action be identified as either ex delicto or ex contractu.*

*Other states (like Oklahoma) let the pleader elect the theory of recovery. Prosser, supra* at 430. *See Oklahoma Natural Gas v. Pack,* 186 Okl. 330, 97 P.2d 768, 770 (1940), where Justice Riley, who was steeped in the tradition and history of the common law, recognized that when the same facts gave rise to both an action *ex contractu* and *ex delicto, the plaintiff could choose between the two theories. See also Keel v. Titan Construction Corporation,* Okl., 639 P.2d 1228, 1232 (1982); *Hall Jones Oil Corporation v. Claro,* Okl., 459 P.2d 858, 861 (1969); *Morris v. Barton,* 200 Okl. 4, 190 P.2d 451, 458 (1948); *Owens v. State,* 133 Okl. 183, 271 P. 938, 942 (1928); *Chicago, R.I. & P. Ry. Co. v. Harrington et al.,* 44 Okl. 41, 143 P. 325, 327 (1914); *Hobbs v. Smith,* 27 Okl. 830, 115 P. 347, 350 (1911).

Many states, including Oklahoma, later adopted the *federal notice pleading regime. See* 12 O.S.1984 Supp. §§ 2001 et seq. *With federal notice pleading, the doctrine of election of remedies became an anachronism.* 12 O.S.Supp.1984 § 2008(E)(2); *Howell v. James,* Okl., 818 P.2d 444, 446–448 (1991). The pertinent terms of § 2008(E)(2) are:

"A party may set forth, and *at trial rely on,* two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. * * *" [Emphasis mine.] Section 2008 was amended by 12 O.S.Supp.1987, eff. Nov. 1, 1987; the amendment has no effect upon this appeal.

Although inconsistent *judgments* and *double recovery* may not be allowed, *a party may now fully litigate all the theories in one trial. Howell, supra* at 447.

*ordinary care.*[4]

Where the *law imposes a duty* in the context of a relationship born of a contract, a person injured by *substandard performance of duty that is his/her due need not bring a tort action; nor need he/she elect between remedies.* Rather, he/she may press a claim for *breach of contract* and *in tort, if the evidence should support both.*[5] With the single exception of *Seanor v. Browne,*[6] we have imposed *no* requirement[7] that—*absent a special promise* apart from the implied undertaking to perform the contract in a workmanlike manner—an injured party must proceed *ex-*

*clusively in tort.*[8] To follow *Seanor's*[9] teaching in this legal malpractice case by restricting the S & L's claim to the tort rubric would require that we withhold *ex contractu* redress from a class of litigants who are promisees of physicians, lawyers,[10] architects and other professionals sued for malpractice. These litigants would be denied the very remedy that is *available against all other defendants who breach an effective promise-based obligation.* An exclusion of malpractice claimants from *ex contractu* redress would clearly violate the procedural uniformity mandate of Art. 5, § 46, Okl.Const.[11] Our own jurisprudence,

---

**4.** *See* e.g., *Seanor v. Browne,* 154 Okl. 222, 7 P.2d 627, 630 (1932); *Funnell v. Jones,* Okl., 737 P.2d 105, 107 (1987), cert. den., 484 U.S. 853, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987), which the court today aptly *distinguishes* from the case *sub judice. See also* the *dictum* in *Flint Ridge Dev. v. Benham–Blair & Aff.,* Okl., 775 P.2d 797, 799 (1989), where we relied on *Securities–Intermountain, Inc., v. Sunset Fuel Co.,* 289 Or. 243, 611 P.2d 1158, 1167 (1980). Oregon, which (*unlike Oklahoma*) did not replace *"fact"* pleading with the federal *"notice" regime, remains a code-pleading state. Davis v. Tyee Industries, Inc.,* 295 Or. 467, 668 P.2d 1186, 1192 (1983). The *Oregon requirement* that the pleader *allege in considerable detail* those breaches of a written contract that constitute a professional defendant's obligations—instead of allowing expected services to be measured by the tort or contract standards of performance *is unknown to the system of notice pleading. See Conley, supra* note 1, where the United States Supreme Court notes that in the federal rules regime, pleading is no longer a game of skill in which one misstep may be fatal to the outcome; rather, *a pleading's purpose is to facilitate a proper decision on the merits.*

**5.** *Howell, supra* note 3 at 446–448; *Chandler, infra* note 14 at 862 n. 13.

**6.** *Seanor, supra* note 4.

**7.** *Even after the aberrational Seanor norm appeared on the juristic stage, we continued to afford the pleader an election where the gravamen of an action was not breach of contract but rather the defendant's tortious conduct in the performance of a duty derived from a contractual relationship. See Burton v. Juzwik,* Okl., 524 P.2d 16, 18–19 (1974); *see also Smith v. Johnston,* Okl., 591 P.2d 1260, 1261–1263 (1979).
 Several generations of legal encyclopedias published on this side of the Atlantic have considered the common-law rule that permits a pleader in malpractice to bring either a contract or a tort claim against a professional defendant to be in the *mainstream of American jurispru-*

*dence. See* 1 R.L.C. ACTIONS § 7 (1914), citing among others *Hobbs, supra* note 3, 115 P. at 350; 1 Am.Jur.2d ACTIONS § 32–36 (1962), citing among others *Conn v. Hunsberger,* 224 Pa. 154, 73 A. 324, 327 (1909); 1 C.J. ACTIONS § 155(9) and 158 (1914), citing among others *Lane v. Boicourt,* 128 Ind. 420, 27 N.E. 1111, 1112 (1891); 1A C.J.S. ACTIONS § 108 (1985), citing among others *Commercial Ins. Co. of Newark v. Apgar,* 111 N.J.Super. 108, 267 A.2d 559, 565 (1970). *See also* 61 Am.Jur.2d PHYSICIANS & SURGEONS, ETC. § 311 (1985), citing among others *Kuhn v. Brownfield,* 34 W.Va. 252, 12 S.E. 519, 521 (1890).

**8.** *The practice of allowing either a contract or a tort action comes from the English common law.* When speaking for the court in Brown v. Boorman, 11 Cl. & F. 1, 8 Eng.Rep. 1003 (1844), Lord Campbell said that "[w]herever there is a contract and something to be done in the course of the employment which is the subject of that contract, *if there is a breach of duty in the course of that employment, the plaintiff may recover either in tort or in contract.*" [Emphasis mine.] *The first reported English malpractice case was founded on contract.* Slater v. Baker, 2 Wils.K.B. 359, 95 Eng.Rep. 860 (1767).

**9.** *Seanor, supra* note 4.

**10.** According to Professor Charles W. Wolfram of Cornell Law School, once the client-lawyer relationship is formed some of its contractual components are no longer subject to alteration by the parties; suits to enforce the lawyer's obligation may ordinarily be brought either *ex contractu* or *ex delicto.* RESTATEMENT (THIRD) OF THE LAW–THE LAW GOVERNING LAWYERS § 26 cmt. b, p. 89 (Tentative Draft No. 5, March 16, 1992).

**11.** The pertinent terms of Art. 5, § 46, Okl. Const., are:
 "The Legislature shall not ... pass any ... special law ...
 * * * * * *
 Regulating the practice or ... inquiry before the courts...."

no less than the Legislature's enactments, must faithfully conform to the fundamental law's prohibition against laws that are "special or local."[12]

A plaintiff who states a claim and proves its facts [13] is entitled to any relief affordable by law; [14] the claimant need neither identify a theory of recovery nor set out the remedy to which he/she may be entitled.[15] At the submission stage, the court must charge the jury on all the theories of recovery the evidence may support.[16]

### CONCLUSION

I would today overrule Seanor[17] and excise from our case law the aberrational notion that suits in malpractice against professional defendants, which arise from an express or implied contractual duty, must

be pressed exclusively in tort unless the parties have explicitly agreed upon a quality of performance different from that imposed or imposable by law.[18] The orthodoxy of the mainstream common law [19] doctrine would be restored by pronouncing that, where a duty of professional care arises from a contractual relationship, a party's substandard performance is nonetheless actionable in a malpractice action [20] both in contract for the breach of a promise-based obligation and in tort for failure to exercise the degree of care that is due.[21] Extant jurisprudence in conflict with this notion constitutes an incorrect exposition of Oklahoma's common law.[22]

SUMMERS, Justice, concurring specially.

The majority correctly holds that our current pleading code is sufficiently liberal

12. "Special laws are those which single out less than an entire class of similarly affected persons or things for different treatment." *Reynolds v. Porter*, Okl., 760 P.2d 816, 822 (1988). "[A] '[s]pecial law' is one that rests on a false or deficient classification. It creates preference and establishes inequity." *Elam v. Workers' Compensation Court of State*, Okl., 659 P.2d 938, 941 n. 8 (1983) (Opala, J., dissenting) (emphasis original).

13. For a full explanation that the "theories of the pleading mentality" has no place in the federal rules regime, see C. Wright and A. Miller, 5 FEDERAL PRACTICE AND PROCEDURE, § 1219 (2nd Ed.1990). See also *Gins v. Mauser Plumbing Supply Company*, 148 F.2d 974, 976 (2nd Cir. 1945), where the court noted that particular legal theories advanced by a party, must yield to the court's duty to grant relief to which a party is entitled, whether demanded or not.

14. *Howell, supra* note 3 at 446–448; *Chandler v. Denton*, Okl., 741 P.2d 855, 862 n. 13 (1987); *Doss Oil Royalty Co. v. Texas Co.*, 192 Okl. 359, 137 P.2d 934, 939 (1943).

15. *Silver v. Slusher*, Okl., 770 P.2d 878, 881 (1989); *Doss, supra* note 14 137 P.2d at 939.

16. *Bradley Chevrolet, Inc. v. Goodson*, Okl., 450 P.2d 500, 502 (1969); *Vogel v. Rushing*, 202 Okl. 277, 212 P.2d 665, 667 (1949).

17. *Seanor, supra* note 4.

18. For the view that in this century malpractice litigation has shifted to tort from the earlier contractual context of the physician/patient relationship because of "professional, social, and regulatory efforts to distinguish the provision of health care services from ordinary commercial

transactions and to create an aura of professionalism untainted by crass commercialism," see G. Robinson, RETHINKING THE ALLOCATION OF MEDICAL MALPRACTICE RISKS BETWEEN PATIENTS AND PROVIDERS, 49 LAW AND CONTEMPORARY PROBLEMS, 173, 182 (1986). [Emphasis mine.]

19. The common law, also called the unwritten law, was known at its birth by the Latin name of lex non scripta regni Angliae or consuetudo Angliae. A body of non-statutory law of the kingdom of England and Wales, it originated from custom and judicial decisions. *McCormack v. Oklahoma Pub. Co.*, Okl., 613 P.2d 737, 740 (1980).

20. The pleader's freedom to press all applicable theories or to choose among them leaves unaffected the basic differences in the substantive law governing tort and contract actions. For example, punitive damages are not recoverable upon a contract claim. *Colby v. Daniels*, 125 Okl. 202, 257 P. 298 (1927).

21. *Howell, supra* note 3 at 446–448; *Chandler, supra* note 14 at 862 n. 13.

22. The provisions of 12 O.S.1991 § 2 are:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object." [Emphasis mine.]

that plaintiff's petition is adequate to withstand a motion to dismiss. I write separately merely to emphasize that a plaintiff's counsel does not have a choice to proceed in contract or tort depending on the client's need to avoid a statute of limitations in a professional malpractice suit.

I would also, as does the majority, distinguish *Funnell v. Jones*, 737 P.2d 105, 107 (Okl.1985) from today's case, but for a different reason. The court correctly notes that the *Funnell* opinion does not refer to allegations of contract. However, the appellate record in that case reveals that breach of contract *was* pleaded, and the contract statute of limitations *was* argued on appeal. *Funnell* is not applicable here, but only for the reason that it dealt with summary judgment rather than failure to state a claim. The majority's treatment of *Funnell* is not part of the holding, is of *de minimis* effect, and is likely cured by the court's explanation that a statute of limitations defense *may* be successfully raised in the context of summary judgment proceedings when the parties have identified with precision the exact nature of the duty that has allegedly been breached.

I continue to entertain the view expressed by us in *Funnell* and by the Oregon Court in *Securities–Intermountain, Inc. v. Sunset Fuel Co.*, 289 Or. 243, 611 P.2d 1158, 1167 (1980), the latter case having been relied on by us in *Flint Ridge Dev. v. Benham–Blair & Aff.*, 775 P.2d 797 (Okl.1989). That view is that suits against physicians or attorneys, even though based on contracts of employment, are actions in tort, unless the parties have expressly spelled out an agreement which would commit the defendant to a certain action or result even in the absence of negligence. In other words, professional malpractice suits are controlled by the two-year tort limitation unless there is shown an express agreement by the defendant to do more than use ordinary care in the treatment or representation of the plaintiff. I believe the Court's opinion leaves that rule of law undisturbed.